UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID WILSON, #158062,

        Plaintiff,

v.

KRIS TASKILA, et al.,

        Defendants.

_____/

Case No. 2:21-cv-236

Hon. Hala Y. Jarbou
Chief U.S. District Judge

## REPORT AND RECOMMENDATION

### I.     Introduction

This Report and Recommendation (R&R) addresses Defendant Patricia Lewis's motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 15.)

Plaintiff — state prisoner David Wilson — filed suit pursuant to 42 U.S.C. § 1983 on November 17, 2021. In his verified complaint, Wilson asserted that while he was confined at Baraga Correctional Facility (AMF) in Baraga, Michigan, Defendants[1] acted with deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights and committed medical malpractice. (ECF No. 1, PageID.3-6.) Specifically, Wilson stated that he began experiencing trouble

---

[1]     Wilson named AMF Warden Kristopher Taskila, Nurse Practitioner (NP) Patricia Lewis, Health Unit Manager (HUM) Gloria Hill, Registered Nurse (RN) Jamie Monville, and Administrative Assistant Subrina Aixen as Defendants. (ECF No. 1, PageID.2-3.)

breathing and swallowing in May of 2020. (*Id.*, PageID.3.) Thereafter, Wilson began experiencing groin pain caused by a benign, fluid-filled testicular cyst. (*Id.*) Wilson said that Defendants inadequately treated his breathing and swallowing problems, and that Defendants failed to treat his cyst. (*Id.*, PageID.3-6.) He asserted that NP Lewis's conduct amounted to medical malpractice. (*Id.*, PageID.6.) On February 23, 2022, this Court issued an opinion and order dismissing all but Wilson's claims against NP Lewis for medical malpractice and for deliberate indifference related to Wilson's testicular cyst (ECF No. 8, PageID.44-45 (Opinion); ECF No. 9, PageID.46 (Order).)

NP Lewis now moves for summary judgment, asserting that Wilson did not properly exhaust his administrative remedies before filing suit. (ECF No. 15.) More specifically, Lewis argues that Wilson's sole grievance against NP Lewis for failing to treat his testicular pain cannot serve to exhaust his claims because it was rejected as containing multiple unrelated issues at Step III of the grievance process. (*Id.*, PageID.70.) Wilson did not respond.[2]

---

[2] The undersigned acknowledges that Wilson sent the Court a letter on August 29, 2022, noting that Defendant Lewis had filed a motion for summary judgment on May 27, 2022, but that the Court "ha[d] yet to issue any notice as to a time frame of when a response is required, or any other requirement." (ECF No. 17, PageID.129.) Wilson claimed that the Court's inactivity led him to write the letter and inquire as to the status of his case. (*Id.*)

The deadline for responding to dispositive motions is not provided by the Court on a case-by-case basis. Instead, it is set forth in this Court's local civil rules. *See* W.D. Mich. LCivR 7.2(c) ("Unless otherwise ordered, any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials."). As the plaintiff in this case, Wilson is responsible for knowing of and adhering to this Court's rules. Moreover, to the extent that Wilson's letter implies that he was ignorant of the rules, the undersigned

2

The undersigned respectfully recommends that the Court deny NP Lewis's motion for summary judgment because the Michigan Department of Corrections (MDOC) waived the argument that the relevant grievance was procedurally defective when it denied the grievance on its merits at Steps I and II of the grievance process. Alternatively, the undersigned recommends that the Court deny NP Lewis's motion because there is a genuine issue as to whether the relevant grievance was properly rejected.

## II.   Relevant Factual Allegations

Wilson says that in late 2020, he submitted a health care request for groin pain. (ECF No. 1, PageID.3.) After submitting his request, Wilson was given an ultrasound and learned that he had a "tiny benign fluid filled cyst" on his left testicle. Wilson says that on February 17, 2021, NP Lewis told Wilson that he would not receive any treatment for the cyst. (*Id.*)

According to Wilson, the cyst continued to cause him pain. (*Id.*, PageID.4.) Even so, on May 11, 2021, NP Lewis reiterated that "she had done all she could do and would no longer do anything else." (*Id.*, PageID.5.) Wilson says that he has filed

---

finds that the implication is disingenuous. This is the eighth case that Wilson has filed with this Court. *See Wilson v. Zak, et al.*, W.D. Mich. Case No. 1:03-cv-795; *Wilson v. Harry, et al.*, W.D. Mich. Case No. 1:17-cv-361; *Wilson v. Gutierrez, et al.*, W.D. Mich. Case No. 1:88-cv-687; *Wilson v. Bushell, et al.*, W.D. Mich. Case No. 2:05-cv-106; *Wilson v. Frechen, et al.*, W.D. Mich. Case No. 2:05-cv-201; *Wilson v. Caruso, et al.*, W.D. Mich. Case No. 2:09-cv-62; *Wilson v. Horton, et al.*, 2:18-cv-198. In three of his previous cases, Wilson responded to motions for summary judgment in adherence with the timeline set forth in the local rules. *See Wilson v. Bushell, et al.*, W.D. Mich. Case No. 2:05-cv-106; *Wilson v. Frechen, et al.*, W.D. Mich. Case No. 2:05-cv-201; *Wilson v. Horton, et al.*, W.D. Mich. Case No. 2:18-cv-198.

"grievance after grievance" regarding his medical issues, including his testicular cyst. (*Id.*, PageID.5-6.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[3] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[3]     If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*)  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

When, as here, the plaintiff fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

### IV.   Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A

prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that

clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

MDOC Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to Wilson's complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id*. at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id*. at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id*. at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id*. at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after

7

the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When prison officials waive enforcement of the MDOC's procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

**V.   Analysis**

NP Lewis asserts that AMF-21-03-0482-12d2 is the only grievance that Wilson filed with respect to Lewis's treatment of Wilson's testicular cyst, and then appealed through Step III of the grievance process. (ECF No. 15, PageID.69-70.) After reviewing all of the grievances that Wilson filed from February of 2021 to November of 2021 (ECF No. 15-1), the undersigned agrees.

The copy of the Step I grievance form for AMF-21-03-0482-12d2 is illegible. (*See id.*, PageID.113.) However, Wilson's complaint was summarized as follows in the Step II grievance appeal response for AMF-21-03-0482-12d2:

> Since 7/6/2021 I've been submitting medical kites for the medical issue of not being able to breathe and pain in my testicles. NP Lewis has examined me several times and identified abnormalities such as crookedness in my throat, small lymph nodes in my neck and tiny benign fluid fill cyst, non-cancer in my testicles. These issues have gone untreated. However, my breathing has got worse, especially in the night hours and I wake up out of my sleep choking and fighting to catch my breath at times. At times it becomes so frightening that my chest and head begin to pound. I have been placed on a mechanical soft diet to ease the swallowing problem with my food but even though it appears not to be enough because I am always in continuous pain in both throat and testicles and I'm in need of better or different medical care to eliminate these conditions.

(*Id.*, PageID.113.)

---

[4]   In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

Although NP Lewis concedes that Wilson complained of the lack of treatment concerning his testicular cyst in the grievance, NP Lewis maintains that AMF-21-03-0482-12d2 failed to exhaust Wilson's administrative remedies with respect to his remaining claims because it was rejected as containing multiple unrelated issues at Step III of the grievance process. (ECF No. 15, PageID.70.) The undersigned disagrees.

In *Raper v. Controneo*, this Court held that when the MDOC denies a grievance on the merits at Steps I and II of the grievance process but then rejects the grievance at Step III based on a pre-existing procedural default, it waives the ability to assert that the prisoner failed to exhaust his administrative remedies. 2018 WL 2928188, at *3 (W.D. Mich., June 12, 2018). Allowing the MDOC to reject a plaintiff's grievance on procedural grounds for the first time at Step III of the process, and then assert that the plaintiff failed to exhaust, would be considerably unfair to a plaintiff who has provided the grieved parties with the notice and opportunity for resolution that underlies the exhaustion requirement. *Powell v. MDOC*, 2019 WL 10744936, at *2 (W.D. Mich., Dec. 19, 2019); *Raper*, 2018 WL 2928188, at *3; *Sedore v. Greiner*, 2020 WL 8837441, at 7 (E.D. Mich. Sept. 21, 2020) ("As a matter of policy, it would be unfair to allow prison officials to address the merits of a prisoner's grievance, but then reject the grievance for a procedural error that existed throughout the process at the final step, where the prison official has the last word."). If AMF-21-03-0482-12d2 truly contained multiple unrelated issues, the MDOC could have rejected the grievance at Steps I and II. It chose not to. Accordingly, the MDOC waived any

argument that AMF-21-03-0482-12d2 failed to exhaust the claims therein because it contained multiple unrelated issues.

But even if the MDOC had not waived the argument that AMF-21-03-0482-12d2 failed to exhaust the claims therein because it contained multiple unrelated issues, there is a genuine issue of material fact as to whether grievance AMF-21-03-0482-12d2 was properly rejected. In interpreting MDOC P.D. 03.20.130 ¶ J(1), this Court has given the phrase "multiple unrelated issues" its ordinary meaning — "multiple disputes, concerns, or problems that are 'not connected or associated.'" *McDuff v. Addis,* No. 1:17-CV-912, 2018 WL 3239491, at *3 (W.D. Mich. July 3, 2018) (citation omitted). In *McDuff*, this Court considered whether a grievance complaining of deliberate indifference involving two separate attacks and two separate misconduct tickets was properly rejected for grieving multiple unrelated issues. *Id.* at *2. The Court determined that the grievance was improperly rejected, as it raised "four events pertaining to a single issue." *Id.*

Construing the facts in the light most favorable to Wilson, the undersigned finds that a reasonable juror could determine that grievance AMF-21-03-0482-12d2 complained of multiple incidents related to a single issue — NP Lewis's alleged ongoing deliberate indifference to Wilson's serious medical needs. As such, a reasonable juror could determine that AMF-21-03-0482-12d2 was improperly rejected at Step III. And when the MDOC improperly rejects a grievance as concerning multiple unrelated issues, it renders the grievance process unavailable with respect to the claims therein. *McDuff*, 2018 WL 3239491, at *4.

11

## VI. Recommendation

The undersigned respectfully recommends that the Court deny NP Lewis's motion for summary judgment because the Michigan Department of Corrections (MDOC) waived the argument that Wilson's grievance was procedurally defective when it denied the grievance on its merits at Steps I and II of the grievance process despite its procedural defect. Alternatively, the undersigned recommends that the Court deny NP Lewis's motion because there is a genuine issue as to whether Wilson's grievance was properly rejected.

If the Court accepts this recommendation, Wilson's deliberate indifference and medical malpractice claims against NP Lewis will remain.

Dated: September 20, 2022                           /s/ *Maarten Vermaat*
                                                    MAARTEN VERMAAT
                                                    U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).